UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FERNANDO LOPERA, on behalf
of himself and all others
similarly situated,

       Plaintiff,

v.                                   Case No.: 8:16-cv-1448-T-33JSS

MIDLAND CREDIT MANAGEMENT,
INC.,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Midland Credit Management, Inc.'s Motion to Dismiss (Doc. # 16), filed on September 7, 2016. Plaintiff Fernando Lopera filed a response in opposition on September 22, 2016. (Doc. # 20). With leave of Court, on October 14, 2016, Midland filed a reply. (Doc. # 31). For the reasons that follow, the Court denies the Motion.

I.  **Background**

Lopera allegedly incurred a debt with FIA Card Services, N.A., on which he defaulted. (Doc. # 1 at ¶¶ 17, 20). Subsequently, Midland Funding, LLC, acquired ownership of the debt and referred it to the debt collector Midland. (Id. at ¶¶ 15-16, 19-22). On June 3, 2015, Midland sent a letter to

1

Lopera attempting to collect on the debt. (Id. at ¶ 23). The letter stated that Lopera owed a current balance of $6,205.96. (Doc. # 1-2). Additionally, under the heading "Choose the Option that Works for You," the letter states:

> [Midland] understands a one-size payment plan doesn't fit everyone's needs. Special offers are now available to help you resolve your unpaid Fia Card Services, N.A. account, which is owned by MIDLAND FUNDING LLC. Select one of the three options below and get closer to having one less thing to worry about.
>
> **Option 1: 40% OFF**              You Pay Only
> Payment Due Date: 07-03-2015  **$3,723.57**
>
> **Option 2: 20% OFF**     12 Monthly Payments of Only
> Payment Due Date: 07-03-2015  **$413.73**
>
> **Option 3: To hear more options, call one of our Account Managers.**
> If these options don't work for you, call one of our Account Managers to help you set up a payment plan that does.

(Id.).

However, the letter did not advise Lopera that the three year statute of limitations had expired for the debt, meaning that Midland could not sue him to collect payment. (Doc. # 1 at ¶¶ 31-33). Additionally, the letter did not explain that if Lopera were to select Option 2, and make a partial payment on the debt, the statute of limitations might reset. (Id. at ¶ 34). Thus, if Lopera made a partial payment, he could

inadvertently reestablish Midland's ability to sue him. (Id.
at ¶¶ 36-37).

According to Lopera, Midland regularly sends similar
letters attempting to collect time-barred debts, in which
Midland does not disclose that the statute of limitations has
expired and offers payment plans that would cause the statute
of limitations to reset when the debtor makes a partial
payment or enters into an agreement to pay. (Doc. # 1 at ¶¶
38-42).

On June 6, 2016, Lopera filed the putative class action
Complaint, alleging that Midland violated three provisions of
the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et
seq. (FDCPA). (Doc. # 1). Subsequently, Midland filed its
Motion to Dismiss, (Doc. # 16), and Lopera responded (Doc. #
20). With leave of Court, Midland also filed a reply. (Doc.
# 31). The Motion is now ripe for the Court's review.

## II.  Legal Standard

On a motion to dismiss, this Court accepts as true all
the allegations in the complaint and construes them in the
light most favorable to the plaintiff. Jackson v. Bellsouth
Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further,
this Court favors the plaintiff with all reasonable
inferences from the allegations in the complaint. Stephens v.

Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th

Cir. 1990)(stating "[o]n a motion to dismiss, the facts stated

in [the] complaint and all reasonable inferences therefrom

are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal

citations omitted). Courts are not "bound to accept as true

a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope

of review must be limited to the four corners of the

complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337

(11th Cir. 2002).

As a preliminary matter, the Court notes that the Motion

to Dismiss has not been converted to a motion for summary

judgment because the Court has not considered matters outside

the pleadings. As the letter sent to Lopera is attached to

and referenced in the Complaint, and is central to Lopera's

claim, the Court may properly consider the letter in ruling

on the Motion to Dismiss. See, e.g., La Grasta v. First Union

4

Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.")(citations omitted).

## III. **Analysis**

"Congress passed the FDCPA to protect consumers from debt collectors' abusive debt collection practices." Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367 (11th Cir. 1998)). To accomplish this, the FDCPA "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." Acosta v. Campbell, No. 6:04-cv-761-ORL-28DAB, 2006 WL 146208, at *12 (M.D. Fla. Jan.18, 2006) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f).

To establish a violation of the FDCPA, a plaintiff must show that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited

by the FDCPA." <u>Olsen v. Cavalry Portfolio Servs., LLC</u>, No.
8:15-cv-2520-T-23AAS, 2016 WL 4248009, at *1 (M.D. Fla. Aug.
11, 2016). The parties dispute only the third element.

Lopera alleges that Midland violated various provisions
of the FDCPA by sending the letter: 15 U.S.C. §§ 1692e,
1692e(2)(A), 1692e(10), and 1692f. Section 1692e, which
prohibits debt collectors from using "any false, deceptive,
or misleading representation or means in connection with the
collection of any debt," provides a non-exhaustive list of
prohibited conduct. Section 1692e(2)(A) prohibits false
representations about "the character, amount, or legal status
of any debt." Section 1692e(10) prohibits "[t]he use of any
false representation or deceptive means to collect or attempt
to collect any debt or to obtain information concerning a
consumer." Under § 1692f, "a debt collector may not use unfair
or unconscionable means to collect or attempt to collect any
debt."

"[W]hether a letter is misleading raises a question of
fact. Generally speaking, 'a jury should determine whether
the letter is deceptive and misleading.'" <u>Buchanan v.
Northland Grp., Inc.</u>, 776 F.3d 393, 397 (6th Cir.
2015)(citation omitted). "Dismissal is appropriate only when
it is 'apparent from a reading of the letter that not even a

6

significant fraction of the population would be misled by it.'" McMahon v. LVNV Funding, LLC, 744 F.3d 1010, 1020 (7th Cir. 2014)(citation omitted); see also Buchanan, 776 F.3d at 397 ("A claim may be implausible on its face because even an unsophisticated consumer would not be confused, making discovery pointless and jury resolution unnecessary.").

The Court employs the "least sophisticated consumer" standard in determining whether a collection effort violates the FDCPA. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir. 2010). This standard maintains an "objective component" and presumes that the "least sophisticated consumer" does "possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. at 1194. According to Lopera, Midland's letter violated the FDCPA because the least sophisticated consumer would be misled as to whether "the debt was legally enforceable" and "the possible consequences of accepting or entering into the payment plan." (Doc. # 1 at ¶¶ 48-50).

The Eleventh Circuit has not directly ruled on whether the least sophisticated consumer could be misled regarding the legal status of a time-barred debt by a collection letter that omits that the statute of limitations expired but does not threaten legal action. See Crawford v. LVNV Funding, LLC,

758 F.3d 1254, 1259 (11th Cir. 2014)(holding that filing suit on a time-barred debt violates the FDCPA and stating that "[f]ederal circuit and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt" violates the FDCPA). However, a number of other circuit courts have addressed the issue and drawn different conclusions.

The two earliest decisions both held that a request for payment on a time-barred debt, absent an implicit or explicit threat of litigation, did not constitute a violation of the FDCPA. The Eighth Circuit decided that, because the statute of limitations does not terminate a valid debt but "merely limits the judicial remedies available," a letter attempting to collect on a time-barred debt has not violated the FDCPA so long as the letter makes no threat of litigation. Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001).

Similarly, the Third Circuit has held that "[i]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." Huertas v. Galaxy Asset Mgmt., 641 F.3d 28,

33 (3d Cir. 2011). The Huertas letter requested that Huertas

call "to resolve the issue" and indicated that the letter was

an attempt to collect a debt, which would be assumed valid if

Huertas did not contest it within thirty days. Id. Because

the letter contained only this information, the court

concluded that "[e]ven the least sophisticated consumer would

not understand [the] letter to explicitly or implicitly

threaten litigation." Id.

Since Huertas and Freyermuth were decided, the Fifth,

Sixth, and Seventh Circuits have concluded that a consumer

may state a claim under the FDCPA when a debt collector sends

a letter seeking repayment of a debt without threatening

litigation. As the Fifth Circuit wrote,

> While it is not automatically unlawful for a debt
> collector to seek payment of a time-barred debt, a
> collection letter violates the FDCPA when its
> statements could mislead an unsophisticated
> consumer to believe that her time-barred debt is
> legally enforceable, regardless of whether
> litigation is threatened.

Daugherty v. Convergent Outsourcing, Inc., 836 F.3d 507, 509

(5th Cir. 2016). Regarding a letter similar to the Midland

letter, in which the debt collector provided a number of

repayment options for a time-barred debt, the Fifth Circuit

concluded that "a collection letter seeking payment on a time-

barred debt (without disclosing its unenforceability) but

offering a 'settlement' and inviting partial payment (without disclosing the possible pitfalls) could constitute a violation of the FDCPA." Id. at 513.

The Seventh Circuit reached the same conclusion about letters in which the debt collector extended offers to "settle" the time-barred debts at a discounted rate. In McMahon, the court found that the plain language of the FDCPA did not require a threat of litigation to establish that a consumer was misled about the legal status of his debt:

> The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt. If a debt collector stated that it could sue on a time-barred debt but was promising to forbear, that statement would be a false representation about the legal status of that debt.

McMahon, 744 F.3d at 1021. Thus, under the reasoning of Huertas and Freyermuth, a letter expressly promising not to sue, but falsely stating that a debt was not time-barred, would not violate the FDCPA even though it includes a literally false statement about the legal status of the debt. Id. at 1020-21. Accordingly, the Seventh Circuit found that a threat of litigation was not determinative of whether a letter violates the FDCPA, and that the Third and Eighth Circuits had not addressed the core issue of whether the least

10

sophisticated consumer would believe that his debt was legally enforceable after reading the letter. See Id. at 1021 ("The courts in Huertas and Freyermuth do not explain why such a misrepresentation about the legal status of the debt, wholly apart from a threat of litigation, does not violate the [FDCPA].").

Similarly, in Buchanan, the Sixth Circuit concluded that a "settlement offer" for a time-barred debt "may falsely imply that payment could be compelled through litigation," even if a collection letter does not threaten suit. Buchanan, 776 F.3d at 399. The court distinguished its holding from the Huertas and Freyermuth decisions, noting that those cases did not "address[] the possibility that consumers might still be confused about the enforceability of a debt or the pitfalls of partial payment." Id. at 400.

Midland argues that the Daugherty, McMahon, and Buchanan cases were wrongly decided, and urges the Court to adopt the reasoning of Huertas and Freyermuth in concluding that a failure to disclose the statute of limitations' expiration for a debt is not an FDCPA violation unless the letter implicitly or explicitly threatens legal action. (Doc. # 31 at 1). In support, Midland highlights two district court cases from this circuit in which the court adopted the reasoning of

11

Huertas and Freyermuth and found that the debt collector had
no duty to inform the consumer that the statute of limitations
had expired or the pitfalls of partial payment. See Ehrich v.
Convergent Outsourcing, Inc., No. 1:15-cv-22796-KMM, 2015 WL
6470453, at *3 (S.D. Fla. Oct. 28, 2015)("Because Convergent
did not initiate or threaten legal action in connection with
its debt collection efforts, it was entitled to seek voluntary
repayment of the time-barred debt."); Olsen, 2016 WL 4248009,
at *2 (stating that "the FDCPA imposes on Cavalry no duty to
advise Olsen of potential defenses, including the expired
limitation or the consequence of partial payment").

     However, the letters in Ehrich and Olsen are
distinguishable. The Olsen letter offered to "settle" the
debt for a percentage of the outstanding balance but also
stated: "The law limits how long you can be sued on a debt.
Because of the age of your debt, we will not sue you for it.
We will continue to report information about your account to
credit reporting agencies." Olsen, 2016 WL 4248009, at *1.
The Midland letter does not contain such an assurance that
the debt collector would not sue because of the debt's age;
rather, the letter is silent as to litigation and the debt's
age. And the Ehrich letter only mentioned a full settlement
offer of the time-barred debt, so the court did not consider

12

whether a partial payment offer that might revive the debt's legal enforceability would be misleading under the FDCPA. See Ehrich, 2015 WL 6470453 at *1.

The Court disagrees with Midland and finds the reasoning of Daugherty, McMahon, and Buchanan persuasive. Although the Midland letter did not request that Lopera "settle" his debt, the letter lists payment options with which Lopera may "resolve" his debt, which could lead a consumer to believe that Midland could enforce the debt in court but was offering a compromise instead. See McMahon, 744 F.3d at 1020 (stating that "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable . . ."); see also Tatis v. Allied Interstate, LLC, No. 16-00109, 2016 WL 5660431, at *9 (D.N.J. Sept. 29, 2016)(refusing to draw a distinction between letters offering to "settle" a debt and a letter offering to "resolve" a debt because "an offer to resolve a debt for a lesser amount is not substantively distinct from an offer to settle the same debt for a lesser amount").

Adding to the impression that Lopera's debt was legally enforceable, the Midland letter states that agreeing to one of the listed payment plans will "get [the debtor] closer to having one less thing to worry about." (Doc. # 1-2). The least

sophisticated consumer could believe that "one [] thing [he has] to worry about" is Midland filing suit to collect on the time-barred debt if he does not agree to one of the payment options.

Furthermore, unlike <u>Huertas</u> and <u>Freyermuth</u>, the <u>Daugherty</u>, <u>McMahon</u>, and <u>Buchanan</u> cases acknowledge the potentially misleading nature of offers to accept partial payments, where such a payment would revive the time-barred debt under the applicable state law. The Seventh Circuit reasoned that

> The fact that both [] letters contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable.

<u>McMahon</u>, 744 F.3d at 1021; <u>see</u> <u>also</u> <u>Buchanan</u>, 776 F.3d at 399 ("[A]n unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. Not true: Some payment is worse than no payment."). Here, the Midland letter offers a partial payment option without discussing the possibility that the first partial payment would make the entire debt legally enforceable again under many states'

14

laws. The Court agrees that the potential revival of a time-barred debt through a partial payment like that requested by Midland "is almost assuredly not within the ken of most people, whether sophisticated, whether reasonably sophisticated, or whether unreasonably unsophisticated." Buchanan at 399.

Midland notes that Florida law is unclear on the revival of time-barred debts by partial payment. (Doc. # 31 at 4). If Florida law applied and did not provide for the revival of the statute of limitations by partial payment, then even the least sophisticated consumer could not be deceived about the consequences of making a partial payment because the negative consequence of which Lopera complains could not occur. Cf. Tatis, 2016 WL 5660431, at *9 (dismissing in part because "under New Jersey law, there is no risk that the least sophisticated consumer would be misled into unknowingly restarting the statute of limitations on a time-barred debt merely by submitting a partial payment" as "revival was only possible if Plaintiff had also acknowledged in a signed writing that she owed the full amount").

Nevertheless, determination of Florida law's applicability would require the Court to look beyond the pleadings, and the Court finds that the Midland letter could

15

mislead the least sophisticated consumer about the debt's enforceability, regardless of whether it misled him about the consequences of partial payment. Cf. Daugherty, 836 F.3d at 513 n.5 (noting that "whether Texas law governs the revival or reset of the statute of limitations pertinent to the particular debt at issue in this case appears to depend on facts outside of the pleadings and is therefore inappropriate for consideration under Rule 12(b)(6)" and "declin[ing] to reach this issue as it is unnecessary to our resolution of this appeal").

Finally, although not bound by the findings of the agency, the Court considers instructive the Federal Trade Commission's conclusion that "[w]hen collectors attempt to recover on debts, in many circumstances, such efforts may convey or imply to consumers that the collectors could sue them if they do not pay" and that offers of partial payment "may convey or imply to consumers that they have only obligated themselves in the amount of the partial payment." FEDERAL TRADE COMMISSION, THE STRUCTURE AND PRACTICE OF THE DEBT BUYING INDUSTRY 46-47 (2013); see also Buchanan, 776 F.3d at 398 (noting that the findings of the FTC are "instructive" regarding whether a debt collection practice is misleading and finding it "fair to infer that, if the agency deems these

same questions worthy of further study, Buchanan deserves a shot too"). As the misleading nature of a collection letter is an issue of fact and the FTC's research indicates that consumers are frequently confused about their time-barred debts, the Court declines to hold at this juncture that the Midland letter was not deceptive or misleading under the FDCPA as a matter of law.

The language and payment plans offered in the Midland letter could lead the least sophisticated consumer to believe that the debt was legally enforceable and that making a partial payment on the debt would be better than making no payment at all. Therefore, at this stage, Lopera has sufficiently stated a claim under the FDCPA.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Midland Credit Management, Inc.'s Motion to Dismiss (Doc. # 16) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of November, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

17